# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GEORGE ENGLEHARDT<br><br>v.<br><br>FALLS TOWNSHIP, et al. | CIVIL ACTION<br>No. 19-3257 |
|---|---|

## MEMORANDUM RE: PARTIAL MOTION TO DISMISS

**Baylson, J.**                                                                                                                       **April 3, 2020**

## I. Introduction

George Englehardt ("Plaintiff") brings this action against Falls Township and Officers Bruce Rhodunda ("Officer Rhodunda"), Chris Iaconna ("Officer Iaconna"), and Thomas Lundquist ("Officer Lundquist") (collectively, "Defendants"), asserting that his constitutional rights were violated by an allegedly unlawful arrest and use of force. Plaintiff's Amended Complaint sets out five claims for relief:

- **Count I:** Unlawful Arrest and Seizure; asserted against Officer Rhodunda, Officer Iaconna, and Officer Lundquist;
- **Count II:** Unreasonable Use of Force; asserted against Officer Rhodunda, Officer Iaconna, and Officer Lundquist;
- **Count III:** Malicious Prosecution; asserted against Officer Rhodunda, Officer Iaconna, and Officer Lundquist;
- **Count IV:** Federal Constitutional Claims; asserted against Falls Township; and
- **Count V:** State Law Claims; asserted against Officer Rhodunda, Officer Iaconna, and Officer Lundquist.

Defendants moved to dismiss Count I against Officer Lundquist; Count III against Officer Rhodunda, Officer Iaconna, and Officer Lundquist; and Count IV against Falls Township. Plaintiff consented to the dismissal of Count I against Officer Lundquist and Count III against Officer Rhodunda, Officer Iaconna, and Officer Lundquist. Therefore, only Count IV against Falls Township is challenged by Defendants' Motion to Dismiss.

1

For the reasons stated below, Defendants' Motion is **GRANTED** and Count IV against Falls Township is dismissed.

## II. Factual History[1]

On October 28, 2018, Plaintiff and his then-girlfriend drove to the "Quality Car Wash" where Plaintiff cleaned his vehicle. (ECF 6, Am. Compl. ¶¶ 12–14.) After Plaintiff finished the cleaning, he sat with his girlfriend in the back of the car. (Am. Compl. ¶ 14.) While Plaintiff and his girlfriend were seated in the back, Officer Rhodunda approached Plaintiff's vehicle, knocked on the window, and motioned for Plaintiff and his girlfriend to exit. (Am. Compl. ¶¶ 15–16.) Plaintiff voluntarily exited the car and placed his hands on the roof. (Am. Compl. ¶ 17.) Although Plaintiff had not committed a crime, Officer Rhodunda handcuffed him while Officer Iaconna looked on. (Am. Compl. ¶¶ 19–21.) Plaintiff alleges that "[w]ithout warning or provocation," Officer Rhodunda twisted Plaintiff's handcuffed wrists and threw him onto the concrete floor. (Am. Compl. ¶ 23.)

Once Plaintiff was on the ground, Officer Iaconna, Officer Lundquist, and Officer Rhodunda struck Plaintiff, dragged him across the concrete floor, and continually forced his head into the ground. (Am. Compl. ¶¶ 24–25.) Plaintiff suffered multiple serious abrasions and lacerations on his face as a result of the incident. (Am. Compl. ¶ 29.)

---

[1] The following factual narrative is drawn from the Amended Complaint and disregards any differences between the Amended Complaint and the original complaint. See W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 173 (3d Cir. 2013) (noting that because "the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint"). The Court takes the allegations in the Amended Complaint as true and draws all reasonable inferences in favor of Plaintiff, as is required at the motion to dismiss stage. Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

Approximately one week after these events, Plaintiff received a citation and summons, issued by Officer Rhodunda, for "Public Drunkenness and Similar Misconduct." (Am. Compl. ¶¶ 30–31.) Following a trial before a magisterial district judge, Plaintiff was found not guilty and the criminal charges were terminated in his favor. (Am. Compl. ¶ 34.)

**III.     Procedural History**

Plaintiff filed this action on July 26, 2019 and amended his complaint on October 10, 2019. (ECF 1; ECF 6.) Defendants partially moved to dismiss the Amended Complaint on October 24, 2019. (ECF 8.) Plaintiff responded in opposition on November 7, 2019. (ECF 9.)

**IV.     Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). The Supreme Court has instructed that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## V. Discussion

The only question before the Court is whether Plaintiff has stated a claim of municipal liability—a Monell claim—against Falls Township. For the reasons that follow, Plaintiff has not alleged facts supporting the imposition of liability on Falls Township.

### A. Legal Framework: Section 1983

The Civil Rights Act, 42 U.S.C. § 1983, imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Evaluating a Section 1983 claim entails a two-step analysis. First, the court must "identify the exact contours of the underlying right said to have been violated in order to determine whether [the plaintiff] has alleged a deprivation of a constitutional right at all." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (internal quotation marks and citations omitted). Second, if a constitutional violation has been alleged, "the analysis then shifts to a determination of whether the state actor … can be held liable for that violation." Id.

Here, the only issue in dispute is the second element: has Plaintiff pleaded facts sufficient to justify imposing liability on Falls Township for the actions of its employees? The Court concludes Plaintiff has not alleged facts that support municipal liability.

### B. No Basis for Imposing Municipal Liability

The dispositive question is whether Falls Township, a municipality, can be held liable under Section 1983 for the acts of its employees. That question is governed by the Monell doctrine, which permits municipal liability when "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

4

official policy, inflicts the injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Monell makes clear that imposing liability on a government actor is appropriate only if the plaintiff identifies a municipal "policy or custom" that caused the injury. Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 403 (1997).

There are three situations where a government "policy or custom" supports holding the municipal entity liable for acts of the entity's employees: (1) where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;" (2) where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;" and (3) where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (internal quotation marks and citations omitted).

In this case, Plaintiff does not allege that Falls Township affirmatively promulgated the policy that caused the constitutional violation. Rather, Plaintiff's theory is that Falls Township's failure to adequately train and supervise its officers amounted to deliberate indifference. (ECF 9, Plaintiff's Opposition at 4.)

Pleading deliberate indifference based on a municipality's failure to train requires the plaintiff allege facts demonstrating that: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)

(internal quotation marks and citations omitted). Although "failure to train" theories of municipal liability are generally premised on the occurrence of a pattern of violations, there is a "narrow range of circumstances" in which the occurrence of a single incident is enough. Bryan County, 520 U.S. at 409; see also Connick v. Thompson, 563 U.S. 51, 64 (2011) (noting it is "rare," but not impossible, that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be held liable under § 1983 without proof of a pre-existing pattern of violations"). To hold a municipal actor liable based on a single incident, the constitutional violation must be "the highly predictable consequence" of the inadequate training program. Id.; see Simonds v. Del. Cty., Civil Action No. 13-7565, 2015 WL 1954364, at *5 (E.D. Pa. Apr. 30, 2015) (O'Neill, J.) (noting that the kinds of situations courts have found to illustrate deliberate indifference based on a single incident often involve "a specific and obvious problem with a procedure employed by the defendant that gave rise to a likelihood of constitutional deprivation").

In this case, Plaintiff's Monell claim rests on paragraph 44 of the Amended Complaint, which alleges that

> Falls Township, ... has encouraged, tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices and customs and to the need for more or different training, supervision, investigation, or discipline in the areas of: (a) Legal cause to stop, detain, and arrest a citizen; (b) The use of force by police officers; (c) The proper exercise of police powers, including not limited to, the use of force; (d) The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct; (e) Police officers' use of their status as police officers to employ the use of force or to achieve ends not reasonably related to their police duties; (f) The failure of police officers to follow established policies, procedures, directives and instructions regarding the use of force under circumstances as presented by this case; (g) The practice of instituting false charges against individuals whom the officers have subjected to unlawful force with the intention of precluding such individuals from instituting civil claims.

This rudimentary allegation does not satisfy the "rigorous standards of culpability and causation" that apply to claims of municipal liability. Bryan County, 520 U.S. at 405. Plaintiff

6

has not alleged that Falls Township had knowledge of, but failed to address, improper police practices employed by the individual officers, nor has he alleged a larger pattern of misconduct by officers in the Falls Township police department. See E.K. v. Massaro, Civ. No. 12-2464 (ES), 2013 WL 5539357, at *5 (D.N.J. Oct. 7, 2013) (finding that the plaintiff had not established deliberate indifference because there were no allegations indicating the municipality knew of alleged unlawful acts perpetrated by either the individual actor or employees more generally). Based on the allegations in the Amended Complaint, there is no support for the inference that Falls Township should have been on notice that its training program was inadequate, and "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 563 U.S. at 62; see also Deems v. Phillips, Civil Action No. 18-2035, 2018 WL 6574184, at *2 (E.D. Pa. Dec. 12, 2018) (Baylson, J.) (concluding allegations did not rise to the "stringent standard" of deliberate indifference because the plaintiff did not "allege[] knowledge on the part of [the municipality] that [the officer] was unfit, or a single other instance in which [the officer] utilized excessive force").

Plaintiff alleges that Falls Township's knowledge can be inferred "[b]ased on the misconduct" of Officer Rhodunda, Officer Iaconna, and Officer Lundquist, but there is nothing in the Amended Complaint that suggests the single incident theory is applicable or appropriate here. (Am. Compl. ¶ 39.) In essence, Plaintiff asks this Court to conclude that Falls Township's training policies must have been inadequate because Falls Township police officers allegedly violated Plaintiff's constitutional rights. Under Plaintiff's rule, a putative Section 1983 plaintiff could successfully state a failure to train Monell claim simply by alleging that a constitutional violation

7

occurred, which would, in effect, impose liability on municipalities solely for the conduct of their employees.

The Supreme Court sought to prevent this result by instructing that failure to train claims are available only in the "limited circumstances" where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 387, 387, 388 (1989). A review of the factual allegations in the Amended Complaint indicates that Plaintiff has not satisfied this "difficult" standard. Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Compare McCall v. City of Phila., 396 F. Supp. 3d 549, 560 (E.D. Pa. 2019) (Rufe, J.) (holding that the plaintiffs did not plead the municipality's deliberate indifference because the complaint "fail[ed] to provide any specific factual support" for the failure to train claim), and Erdreich v. City of Phila., Civil Action No. 18-2290, 2019 WL 1060051, at *13 (E.D. Pa. Mar. 6, 2019) (Slomsky, J.) (dismissing Monell claim because the complaint was "devoid of any facts that show that [the police commissioner] knew that there was an alleged omission in the police training program but made a deliberate choice to retain the program"), with Barrera v. Cty. of Bucks, Civil Action No. 14-7136, 2015 WL 4474398, at *4 (E.D. Pa. July 22, 2015) (Baylson, J.) (denying motion to dismiss Monell claim because the complaint "allege[d] specific facts concerning [the officer's] conduct within the prison system, pointing to the prison's history of sexual assault by guards, a systemic failure to report such assaults, deficiencies in the ethics and procedural training of guards, and oversight in the promotion and supervision of guards").

The Third Circuit's decision in Estate of Roman confirms that the lack of factual allegations supporting Plaintiff's Monell claim is fatal. The failure to train theory in Estate of Roman was supported by two facts: a statement in a consent decree with the federal government

8

that the municipality's police officers generally were not trained on the requirements of the Fourth Amendment, and a statement by the head of the police union that the last training he received occurred twenty years prior. 914 F.3d at 800. These facts were "strong enough" to allow the Monell claim to survive the municipality's Rule 12 challenge. Id. at 802. Here, by contrast, the Amended Complaint is devoid of any facts supporting the inference that Falls Township should have provided additional or better training. The Amended Complaint contains only a conclusory allegation that Falls Township's training practices were inadequate, which is not enough to impose municipal liability under Monell.

Plaintiff contends that "the substantial need for discovery" weighs against dismissal, but he does not identify any precedential Third Circuit case requiring sensitivity to this need. (Plaintiff's Opposition at 6.) To the contrary, our Court of Appeals has cautioned that "[t]he scope of failure to train liability is a narrow one." Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001); see also Bryan County, 520 U.S. at 403–04 (noting that a municipality should be held liable "only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality"); Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) ("[W]hile Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others."). Because deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," courts must carefully examine failure to train claims, even at the motion to dismiss stage. Id. at 410. The Court has carefully reviewed the allegations in Plaintiff's Amended Complaint and finds that they

do not reflect a "deliberate or conscious" choice by Falls Township.  Brown, 269 F.3d at 215.

Plaintiff's Monell claim is therefore dismissed.

**VI.    Conclusion**

For the foregoing reasons, Defendants' Partial Motion to Dismiss is granted and Count IV, asserted against Falls Township, is dismissed without prejudice.  Plaintiff may file an amended complaint addressing the deficiencies outlined in this Memorandum within thirty days.

An appropriate order follows.

O:\CIVIL 19\19-3257 19cv2357 Memorandum re Defendants' Motion to Dismiss